**KOMATSU FORKLIFT MANUFACTUR-
ING CO. OF U.S.A., et al., Plaintiffs,**

v.

**UNITED STATES of America,
Defendants,**

**Hyster Company, et al.,
Defendants–Intervenors.**

Court No. 89–06–00351.

United States Court of
International Trade.

July 11, 1989.

Pillsbury, Madison & Sutro (Donald E. deKieffer, on the briefs and at oral argument, Roderick M. Thompson on the briefs), and appearances by Judith A. Ott and Howard Lipper, Washington, D.C., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., (Velta A. Melnbrencis, New York City, on the briefs and at oral argument) and (Gregory Shorin, U.S. Dept. of Commerce, Washington, D.C., of counsel), for defendants.

Collier, Shannon, Rill & Scott, (Paul C. Rosenthal on motion to intervene, on the briefs and at oral argument, and Mary T. Staley and Robin H. Gilbert, Washington, D.C., on motion to intervene and on the briefs), for defendants-intervenors.

## MEMORANDUM AND ORDER

RE, Chief Judge:

In this action, plaintiffs, Komatsu Forklift Manufacturing Co. and Komatsu Forklift Inc. move to enjoin the defendant, through its agent, the International Trade Administration of the Department of Commerce (Commerce), from disclosing the proprietary information submitted by plaintiffs in response to a request for information in a circumvention inquiry.

Plaintiffs object to the release of the information to the Hyster Company, a domestic producer and intervenor in this action, on the ground that the response contains "highly sensitive proprietary information," the release of which would cause "irreparable harm" to its domestic operations. Defendant opposes the motion, and contends that plaintiffs have failed to satisfy the requisite criteria for injunctive relief. Since the court agrees that plaintiffs have not demonstrated their entitlement to the relief sought, their motion is denied and the action is dismissed.

On June 16, 1989, plaintiffs filed an application with the court for a temporary restraining order (TRO) and a motion for a preliminary injunction. On that date, the court issued a TRO restraining Commerce from releasing plaintiffs' proprietary information, and set a hearing for June 23,

1989, on the motion for a preliminary injunction.

On June 20, 1989, defendant filed an order to show cause requesting that plaintiffs show cause why the TRO issued by the court "should not be limited to the information designated as proprietary by plaintiffs." The following day, the court denied defendant's application, "without prejudice to renew at the preliminary injunction hearing scheduled for June 23, 1989." At that hearing the court granted defendant's motion that the TRO "be limited to cover only information designated as proprietary in the responses submitted to the Department of Commerce by the plaintiffs."

During oral argument, on June 23, 1989, the court ordered that the hearing on plaintiffs' motion for a preliminary injunction be consolidated with the trial on the merits pursuant to USCIT Rule 65(a)(2). In the event the parties were unable to resolve the disclosure issue administratively, a hearing was scheduled for June 29, 1989. On June 23, the court also granted Hyster's motion to intervene.

On June 29, 1989, the court heard argument from the parties. In view of the prompt resolution which the law requires on these matters, the court, at the conclusion of the hearing, dissolved the TRO and denied plaintiffs' motion for a preliminary injunction.

## BACKGROUND

Plaintiffs are engaged in the manufacture of industrial forklift trucks. Hyster is a direct competitor in the United States forklift market. In April 1987, Hyster filed with Commerce an antidumping duty petition against internal combustion industrial forklift trucks from Japan "on behalf of the United States industry." Plaintiffs were among the respondents to that proceeding.

In October 1987, plaintiffs began production of forklift trucks in the United States. In November 1987, Commerce rendered its preliminary determination in the antidumping investigation. In its determination, Commerce found that several Japanese respondents, including plaintiffs, were selling imported forklift trucks in the United States at less than fair value. An antidumping duty order covering plaintiffs and the other respondents was issued on June 8, 1988.

In the fall of 1988, Hyster requested Commerce to require Japanese-related forklift manufacturers to provide detailed information about their United States operations. This request was based on Hyster's theory that the development of United States operations by Japanese-related companies constituted an attempt to circumvent the outstanding antidumping order.

On February 27, 1989, Commerce sent plaintiffs a request for detailed information about plaintiffs' domestic operations in connection with Commerce's "inquiry" regarding anti-circumvention. On April 21, 1989, plaintiffs submitted a detailed response to Commerce that included its United States forklift sales data, prices, identities of suppliers and customers, components and parts values, descriptions of production processes, details of its strategic corporate planning and development, and photographs of its automated welding facilities and assembly processes, data that is regarded as "proprietary information."

Plaintiffs also submitted to Commerce, and served on Hyster, a public version of its response with the proprietary information deleted. On April 27, 1989, Hyster submitted an application to review "any and all proprietary data in the response submitted by Komatsu" subject to Administrative Protective Order (APO) so that Hyster might "participate meaningfully in the investigation." On May 8, 1989, Commerce notified plaintiffs of Hyster's application. By letter dated May 15, 1989, plaintiffs objected to Hyster's request.

On June 8, 1989, Commerce issued an APO requiring plaintiffs to release the proprietary information to Hyster, subject to the terms and conditions contained in the application for disclosure, with the exception of "computer tapes, customer and supplier names, future business plans, and ver-

ification exhibits." In addition to the excepted information, the APO also restricts the release of the proprietary information and permits disclosure solely to four designated representatives of Hyster, namely Mr. Paul C. Rosenthal, Ms. Mary T. Staley and Mr. Nicholas D. Giordano, the attorneys, and Mr. Michael A. Hurak, counsel's economist.

On June 14, 1989, Commerce informed counsel for plaintiffs that plaintiffs must agree to the release of their proprietary information to Hyster in five business days unless plaintiffs requested that this proprietary information be returned to them within 48 hours. However, if plaintiffs objected to the release of this information, and requested its return or withdrawal, Commerce stated that it would not consider any of plaintiffs' responses in evaluating Hyster's allegations against plaintiffs, and would resort to the best information otherwise available.

Plaintiffs' motion for preliminary injunction alleges that plaintiffs will be irreparably harmed if the requested injunctive relief is not granted. Plaintiffs seek an order enjoining defendant, through its agent, Commerce, "from releasing, disclosing or other disseminating, directly or indirectly, any of the information designated as Proprietary in the responses to the Department of Commerce's request for information on Circumvention Determination dated April 21, 1989, to any person, firm or entity other than an officer or employee of the Department who is directly concerned with carrying out the inquiry...."

Plaintiffs admit that the requested APO restricts release of their proprietary information to four specifically designated representatives of Hyster. Nevertheless, plaintiffs maintain that disclosure would unavoidably create a substantial risk of further disclosure within Hyster. In addition, plaintiffs maintain that, pursuant to Commerce's regulation, a *Federal Register* notice initiating this segment of an antidumping proceeding must be published before an APO may be issued.

Defendant opposes the requested injunctive relief, and contends that the action should be dismissed since plaintiffs will "not suffer immediate irreparable injury in the event injunctive relief is denied." Defendant emphasizes that the APO is narrowly tailored, and that there are specific restrictions for the release of any information outside the limits of the APO. Defendant also maintains that plaintiffs cannot prevail on the merits because plaintiffs "have failed to demonstrate that the information which Commerce had decided to disclose is of the type for which there is a clear and compelling need to withhold disclosure." Finally, defendant contends that publication in the *Federal Register* is not necessary because "Congress has not specified that Commerce must publish a notice initiating the inquiry."

Defendants–Intervenors also maintain that plaintiffs' request for a preliminary injunction should be denied. According to Hyster, "the statute and regulations fully authorize the release of proprietary information to counsel to domestic interested parties during the course of a circumvention inquiry." Furthermore, Hyster submits that "if [Komatsu] releases the data to counsel for Hyster and the Unions, Komatsu has offered no new evidence that it would be harmed other than the mere speculation of harm resulting through 'improper' disclosure of the proprietary information."

## INJUNCTIVE RELIEF

As this court noted in *American Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 298, 515 F.Supp. 47, 52 (1981), "[i]t is not questioned that a request for a preliminary injunction is of an extraordinary nature which should be granted sparingly. Indeed, it has been said that it should be granted only upon a clear showing that the movant is entitled to the requested relief." (citations omitted).

Many cases may be cited which set forth the requisite criteria for a preliminary injunction. *See, e.g., A.O. Smith Corp. v. FTC*, 530 F.2d 515 (3d Cir.1976); *Buffalo Forge Co. v. Ampco–Pittsburgh Corp.*, 638 F.2d 568 (2d Cir.1981). A summary is found in the case of *S.J. Stile Assocs. v.*

*Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981), which states the requirements as follows: "(1) a threat of immediate irreparable harm; (2) that the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored appellant." The failure to establish any one of these criteria is fatal to the application for preliminary injunctive relief. *Id.*

Notwithstanding counsel's able argument, plaintiffs' motion for an injunction must be denied. Plaintiffs have failed to show that without a preliminary injunction they would be threatened with "immediate irreparable harm."

Plaintiffs assert that the information contained in their April 21, 1989 response is "extremely sensitive." Specifically, at oral argument counsel for plaintiffs urged that its manufacturing process should be accorded "trade secret status," and that this was precisely the type of information that 19 U.S.C. § 1677f(c) does not require to be released.

That cited statute pertaining to the present inquiry provides:

> Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the information requested and sets forth the reasons for the request, the administering authority or the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (*except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure*) available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding....

19 U.S.C. § 1677f (1982), *as amended by* Omnibus Trade and Competitiveness Act of Aug. 23, 1988, Pub.L. No. 100–418, § 1332, 102 Stat. 1107, 1207 (1988) (emphasis added).

In addition to the plain language of the statute, the legislative history of the provision states clearly that "business proprietary information shall be subject to disclosure under an administrative protective order; the exceptions authorized are intended to be very narrow and limited exceptions." H.R.Rep. No. 576, 100th Cong., 2d Sess. 623, U.S.Code Cong. and Admin.News 1988, pp. 1547, 1656 (1988).

It is clear, therefore, that the statute specifically imposes a duty of disclosure upon receipt of an application. The statutory exception applies solely to "privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold disclosure." Here, plaintiffs have not made a sufficiently definite or sufficient showing to indicate that the information in its response ought not to be disclosed. Plaintiffs have not shown that the information was privileged or classified, or "specific information of the type for which there is a clear and compelling need to withhold from disclosure."

Plaintiffs argue that "in many instances proprietary information released by the government under an APO ... has found its way past the attorneys to a direct competitor." The mere possibility that information could be inadvertently disclosed under an APO is not enough to overcome the statutory policy favoring disclosure. Moreover, the imposition of sanctions for even inadvertent disclosures militates against this possibility. *See D & L Supply Co. v. United States,* 12 CIT ——, 693 F.Supp. 1179, 1182 (1988).

Finally, plaintiffs argue that, until Commerce publishes a notice indicating a circumvention inquiry, it is not authorized to release any proprietary information subject to an APO. Although the statute provides for a circumvention inquiry it does not specify that Commerce must publish a notice initiating an inquiry. *See* Omnibus Trade and Competitiveness Act of Aug. 23, 1988, Pub.L. No. 100–418, § 1321, 102 Stat. 1107, 1192 (1988) (to be codified at 19 U.S.C. § 1677j). Furthermore, plaintiffs and the other parties received appropriate

notices of the circumvention inquiry. Since plaintiffs received actual notice, they cannot claim that they were harmed by the lack of publication notice.

Since plaintiffs have failed to satisfy the criteria for injunctive relief, the temporary restraining order is dissolved, the motion for a preliminary injunction is denied, and the action is dismissed.

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now in conformity with said decision,

IT IS ORDERED, ADJUDGED, AND DECREED: that the temporary restraining order issued on June 16, 1989, is, hereby, dissolved;

ORDERED, ADJUDGED, AND DECREED: that plaintiffs motion for a preliminary injunction is denied; and it is further

ORDERED, ADJUDGED, AND DECREED: that the action is dismissed.