**BETHLEHEM STEEL CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant,**

**and**

**The Algoma Steel Corporation, Limited, Defendant–Intervenor.**

**Court No. 89–07–00431.**

United States Court of International Trade.

July 25, 1989.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon and Elizabeth M. Seltzer, Washington, D.C., for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis, on the brief, and A. David Lafer at oral argument), U.S. Dept. of Commerce, Office of the Chief Counsel for Import Admin., and Tina Stikas, Washington, D.C., for defendant.

Dow, Lohnes & Albertson, William Silverman, Ryan Trainer, Douglas J. Heffner, R. Will Planert, Washington, D.C., and Bernice A. Browne, for defendant-intervenor.

DiCARLO, Judge:

Plaintiff seeks disclosure, under protective order, of certain verification exhibits submitted by a foreign producer in an ongoing antidumping investigation of new steel rail, except light rail, from Canada. This is the first case to arise under 19 U.S.C. § 1677f(c)(1), as that provision was amended by section 1332 of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107, 1207–09 (1988). The amended statute provides that for antidumping investigations initiated after August 23, 1988, the International Trade Administration of the United States Department of Commerce shall make *all* business proprietary information available to interested parties who make a request, in general terms, with their reasons for the request, unless the information is privileged or classified, or unless there is a clear and compelling need to withhold disclosure.

At oral argument held on July 19, 1989, the Court found that neither the government nor the defendant-intervenor had shown a clear and compelling need to withhold disclosure. Since the administrative protective order was conceded to be sufficient, the Court granted plaintiff's motion for protective order access to specific verification exhibits. This opinion memorializes the grounds for granting the request for access.

## DISCUSSION

Commerce released confidential versions of sales and cost verification reports to plaintiff's counsel, who then requested protective order access to the exhibits for these reports. R. 5–7, 9. Commerce denied access on July 5, 1989 on the basis that verification exhibits constitute "specific information of a type for which there is a clear and compelling need to withhold from disclosure." A full history is set forth in *Bethlehem Steel Corp. v. United States*, 13 CIT ——, 718 F.Supp. 67 (1989).

### I. *De Novo Review*

■ The issue is whether there is a clear and compelling need to withhold disclosure of verification exhibits. Where Commerce denies protective order access to confidential data, an action to compel disclosure is based on 28 U.S.C. § 1581(f) (1982) and evaluated *de novo* on the record before the Court. *American Brass v. United States*, 12 CIT ——, 699 F.Supp. 934, 936 (1988); *D & L Supply Co. v. United States*, 12 CIT ——, 693 F.Supp. 1179, 1181 (1988).

### II. *Clear and Compelling Need to Withhold Disclosure*

The release of confidential information has been increasingly liberalized since the

Trade Agreements Act of 1979 first authorized release under protective order of confidential information submitted by petitioners and respondents in antidumping and countervailing duty investigations. *SNR Roulements v. United States*, 13 CIT ——, 704 F.Supp. 1103, 1106 (1989). For actions initiated after August 23, 1988, section 1332(2)(A) of the Omnibus Trade and Competitiveness Act further liberalized the release of confidential information.

■ The burden of proof has now shifted from the party requesting confidential data having to show a need for it, to the submitting party and the agency, which must show that the documents are privileged, classified, or that there is a clear and compelling need to withhold disclosure:

> Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the information requested and sets forth the reasons for the request, the administering authority or the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure) available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding.

Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1332(2)(A), 102 Stat. 1107, 1208 (1988).

## A. The General Nature of Verification Exhibits

The government states that there is a clear and compelling need to withhold disclosure of verification exhibits because they generally comprise some of the most confidential information submitted during a proceeding. The government claims verification exhibits often consist of internal business records that go to the heart of a company's operations.

■ The Court finds that from a plain reading of the statute, there is no support for categorical denials of access to documents without a proper analysis of whether the documents are privileged or classified, or whether there is a clear and compelling need to withhold disclosure.

Although this finding is based upon the plain language of the statute, the legislative history also supports a finding that the "clear and compelling need" exception was anticipated "to be used rarely, in situations in which substantial and irreparable financial or physical harm may result from disclosure." H.Conf.Rep. No. 576, 100th Cong., 2d Sess. 623 (1988), U.S.Code Cong. & Admin.News 1988, pp. 1547, 1656. Another House committee report provides:

> Although the administering authority will still retain a limited amount of discretion to refuse to release certain types of information that are not relevant to dumping or subsidy determinations, it is the Committee's intent that, as a general rule most business proprietary information will be releasable under protective order. Particular exceptions might include trade secrets, customer names, and the names of consulting firms conducting market research. The state in the proceeding at which the information is provided to the administering authority, e.g., at verification, is not dispositive of whether the administering authority must release the information.

H.R.Rep. No. 40, 100th Cong., 1st Sess. 140 (1987). The Court is, of course, mindful of the limitations of reliance on legislative history. *See Brechteen Co. v. United States*, 854 F.2d 1301, 1303–04 (Fed.Cir.1988).

## B. Relevancy

■ The government states that unlike questionnaire responses, information contained in verification exhibits may not be limited to the product under investigation. In this investigation, the government states that the exhibits contain data for non-rail steel products that are not subject to investigation. The government claims there is a clear and compelling need to withhold disclosure when documents contain business

proprietary information on products not under investigation.

The Court inquired into the relevance of the documents sought. The documents contain information concerning the product under investigation and also other products produced by the foreign manufacturer. The Court found that a general objection on the grounds of relevancy to the investigation did not rise to a clear and compelling need to adopt a categorical rule against disclosure of verification documents. The possibility that exhibits may contain information on other products in addition to products under investigation is an insufficient basis to support a general rule against disclosure. If the Court were to adopt a contrary rule, a foreign producer could always prevent disclosure of exhibits merely by submitting documents which contained data for irrelevant products.

C. Customer and Supplier Names

The government also claims a clear and compelling need to withhold verification exhibits because they may contain highly confidential customer and supplier names.

The legislative history recognizes that "[p]articular exceptions [to disclosure under protective order] *might* include trade secrets, [and] customer names...." H.R. Rep. No. 40, 100th Cong., 1st Sess. 140 (1987) (emphasis added). At oral argument defendant conceded that Commerce has disclosed customer names on occasion. The legislative history identifies possible exceptions to disclosure, but there is no blanket prohibition on disclosing documents containing these categories of information.

The plaintiff conceded that it did not need any customer or supplier names in order to present its arguments effectively. The Court accordingly ordered that the customer and supplier names could be redacted from the copy of the verification exhibits to be disclosed. Since little time remained until the expected publication of the final results, the Court made the redaction of customer and supplier names contingent upon the time involved to redact the names. *See Alignment and Postponement of Final Countervailing Duty and Antidump-*ing Duty Determinations and Postponement of Antidumping and Countervailing Duty Public Hearings; New Steel Rail, Except Light Rail, From Canada, 54 Fed.Reg. 14,264 (Apr. 10, 1989).

D. Chilling Effect

The government does not claim that a possible "chilling effect" on its ability to collect data in future investigations constitutes a clear and compelling need to withhold the verification exhibits. *See* H.R. Rep. No. 576, 100th Cong., 2d Sess. 623 (1988), U.S.Code Cong. & Admin.News 1988, p. 1656.

E. Sanctions

The defendant-intervenor conceded that the sanctions and protections in the administrative protective order were adequate.

III. *No Independent Investigation*

Although disclosure of confidential information is meant to aid in effective advocacy, petitioners' counsel are not empowered to act as independent investigators. *SNR Roulements,* 13 CIT at ——, 704 F.Supp. at 1109; *Monsanto Indus. Chem. Co. v. United States,* 6 CIT 241, 243, 1983 WL 2224 (1983). Petitioners should not attempt pure duplication of Commerce's function, but rather should provide the comment and analysis which will contribute to the objectives of the investigation more than it will detract from the confidentiality of the information. *SNR Roulements,* 13 CIT at ——, 704 F.Supp. at 1109; *Arbed, S.A. v. United States,* 4 CIT 132, 136, 1982 WL 2260 (1982).

Plaintiff claims that without the exhibits, it cannot respond to claims in the foreign producer's written submissions based upon specific verification exhibits. Plaintiff thus is not claiming a need to duplicate Commerce's function, but rather a need to respond to specific arguments based on particular verification exhibits.

CONCLUSION

The Court finds that neither the government nor the foreign producer have estab-

lished a clear and compelling need to withhold protective order disclosure of the verification exhibits requested. The foreign producer was given an opportunity to consider whether it wished to withdraw any of the verification exhibits before they were released to plaintiff's counsel under protective order. Since plaintiff conceded that it had no need for customer and supplier names, the court allowed redaction of these names unless the time required to accomplish the task would impair the plaintiff's ability to participate in the administrative proceeding.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision at oral argument and issued written opinion based on that decision; now in conformity with that decision,

IT IS HEREBY ORDERED that this action under 28 U.S.C. § 1581(f) (1982) is dismissed.