ALLIED TUBE & CONDUIT CORP., Sawhill Div., Cyclops Corp., and Wheatland Tube Co., Plaintiffs,

v.

UNITED STATES, Defendant,

and

The Royal Thai Government, Saha Thai Steel Pipe Co., Ltd., Siam Steel Pipe Import–Export Co., Ltd., Thai Hong Steel Pipe Co., Ltd., and Thai Union Steel Co., Ltd., Defendant–Intervenors.

No. 89–06–00353.

United States Court of International Trade.

Aug. 31, 1989.

Schagrin Associates, (Roger B. Schagrin, Paul W. Jameson and Mark C. Del Bianco) for plaintiffs.

Stuart E. Schiffer Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Velta A. Melnbrencis, Jane E. Meehan and Leila Afzal); Ann White, Attorney–Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for defendant.

Willkie, Farr & Gallagher, (Arthur J. Lafave III and Daniel L. Porter) for defendant-intervenors.

## OPINION AND ORDER

CARMAN, Judge:

Plaintiffs Allied Tube and Conduit Corp., Sawhill Div., Cyclops Corp., and Wheatland Tube Co. (plaintiffs) contest the denial by the Department of Commerce, International Trade Administration (Commerce), of their request for release of confidential business proprietary information contained in documents utilized by Commerce for verification of questionnaire responses in the administrative review (for 1987) of the countervailing duty order in *Circular Welded Carbon Steel Pipes and Tubes From Thailand* (Inv. No. C–549–501). Plaintiffs seek an order from this Court, pursuant to section 777(c) of the Tariff Act of 1930 (the Act) as amended, compelling Commerce to release the confidential information to plaintiffs under an administrative protective order. 19 U.S.C. § 1677f(c) (1982) *as amended by* the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1332(3), 102 Stat. 1107, 1208–09 (1988) (the 1988 Act). This Court has jurisdiction pursuant to 28 U.S.C.

§ 1581(f) (1982).[1]

Commerce opposes this action arguing that the information should not be disclosed due to its sensitive and highly confidential nature. Defendant's Memorandum In Opposition To Plaintiffs' Motion For Release Of Confidential Information To Plaintiffs' Counsel Pursuant To A Judicial Protective Order at 3–4.[2] Defendant-intervenors (intervenors), citing legislative history, claim that verification documents do not fall within the scope of section 777 of the Act, and are *per se* exempt from disclosure under the Act. Alternatively, intervenors argue that even if verification exhibits are within the scope of the disclosure provisions of section 777, there is a clear and compelling need to withhold disclosure in this case. *See* Intervenors' Opposition To Plaintiffs' Application For Access To Confidential Information Under Protective Order (Intervenors' Brief).

On the basis of the papers submitted, the Court's examination of the documents *in camera*, the arguments of the parties and a careful reading of the relevant statutes, this Court grants plaintiffs' application except for items redacted by agreement of the parties. This Court finds that under the statute and in accordance with *Bethlehem Steel Corp. v. United States*, 13 CIT ——, 718 F.Supp. 70 (1989) verification exhibits as a class are not exempt from disclosure under section 777(c) and that Commerce has failed to show a clear and compelling need to withhold disclosure of the verification exhibits in question as mandated under the statute. Further, this Court finds that intervenors have failed to meet the requirements for a stay of this Court's order pending appeal.

## BACKGROUND

Plaintiffs, interested parties to Commerce's administrative review of the 1987 period of the countervailing duty order concerning *Circular Welded Carbon Steel Pipes and Tubes From Thailand*, filed several requests for release of business proprietary information pursuant to 19 U.S.C. 1677f(c)(1). *See* Complaint, Exhibits 2 and 5. These requests encompassed questionnaire responses and verification reports. Commerce subsequently released the questionnaire responses to plaintiffs under the extant administrative protective order, but refused to release verification exhibits. *Id.*, Exhibits 1 and 3. By letter dated June 12, 1989, Commerce provided a specific denial of plaintiffs' request for release of verification exhibits and the reasons for its denial. Letter from Paul McGarr, Program Manager, Office of Countervailing Compliance, Complaint, Exhibit 1.

The letter stated the "1988 Act contains no specific reference to the release of verification exhibits and, therefore, there is no specific mandate to release verification exhibits." *Id.* at 2. Continuing, the letter outlined Commerce's position:

> We believe there is a clear and compelling need to withhold release of verification exhibits. Verification exhibits merely corroborate the information presented in the response. Verification exhibits, such as sales ledgers, often contain sensitive price and sales information for products not under review. Disclosing such data might cause substantial harm to respondents by revealing important company pricing and marketing decisions to competitors, thus providing them with an unfair and unnecessary competitive advantage. Further, verification exhibits consist of internal business records that go to the heart of daily business

---

1. 28 U.S.C. § 1581(f) states:
   The Court of International Trade shall have exclusive jurisdiction of any civil action involving an application for an order directing the administering authority or the International Trade Commission to make confidential information available under section 777(c)(2) of the Tariff Act of 1930.

2. Commerce did not file a brief concerning the merits of its opposition to plaintiffs' claim. The Court was apprised of Commerce's position at oral argument held on August 16, 1989 and through its brief in opposition to plaintiffs' motion for release of the confidential information under a judicial protective order. The Court notes that due to the dispositive nature of this opinion, plaintiffs' motion for a judicial protective order has become moot.

transactions that are extremely sensitive to a company's operations. Release of such documents would be viewed by cooperative respondents as a breach of trust and would severely impair our ability to gather such documents in the future. Finally, applicants have access to all the information necessary to comment on, and participate in, the review without access to the underlying substantiating documents.

*Id.* Subsequent to plaintiffs' initiation of this action, the verification documents in question were transmitted to this Court under seal pursuant to 28 U.S.C. § 2635(c) enabling this Court to examine the documents *in camera.*[3]

A hearing for all purposes was held before this Court on August 16, 1989, at which time legal arguments were made but no evidence whatsoever was offered. At the close of the hearing this Court found that Congress intended for business proprietary information contained within the verification exhibits to be subject to disclosure under the statute. Additionally, this Court found that Commerce had failed to offer evidence showing a clear and compelling reason for withholding disclosure of any of the contested documents. Transcript of Hearing on August 16, 1989 (Tr.) at 67–68.

Upon the consent of all parties, the Court ordered Commerce, in consultation with intervenors, to review the documents and to return to open Court with copies of the proposed redactions of customer and sup-

plier names highlighted for this Court's *in camera* review.[4] The parties reconvened before this Court on August 22, 1989 at which time Commerce agreed to transfer the proposed redactions to the documents in the Court's record under seal. At that time argument was heard on intervenors' motion for a stay of the Court's order in this case pending appeal.[5]

## CONTENTIONS OF THE PARTIES

Plaintiffs argue that the statute requires Commerce to release under protective order *"all"* business proprietary information contained within the record, including verification exhibits, subject to a limited exception for information which Commerce can demonstrate a clear and compelling need to withhold. Memorandum In Support Of Plaintiffs' Application For Access To Confidential Information Under Protective Order at 5. At the hearing plaintiffs maintained that neither Commerce nor intervenors presented any evidence or persuasive argument showing a clear and compelling need to withhold disclosure. Tr. at 65. At the close of the hearing, plaintiffs consented to the redaction of customer and supplier names. *Id.*

Commerce originally appeared to press the argument that all verification exhibits should be exempt from disclosure due to their inherently sensitive nature and allegedly tenuous relevance to interested parties' participation in the proceedings. However, at the hearing the government conceded that Commerce was reformulat-

---

**3.** Section 2635(c) of title 28 of the United States Code, provides in pertinent part:

Within fifteen days, ... after service of a summons and complaint in a civil action involving an application for an order directing the administering authority ... to make confidential information available under section 777(c)(2) of the Tariff Act of 1930, the administering authority ... shall transmit under seal to the clerk of the Court of International Trade, as prescribed by its rules, the confidential information involved, together with pertinent parts of the record. Such information shall be accompanied by a nonconfidential description of the nature of the information being transmitted. The confidential status of such information shall be preserved in the civil action, but the court may examine the

confidential information in camera and may make such information available under a protective order consistent with section 777(c)(2) of the Tariff Act of 1930.

28 U.S.C. § 2635(c) (1982).

**4.** The Court also notified Commerce that upon the return date, it would hear any additional evidence showing clear and compelling reasons to withhold disclosure since certain parts of the documents were in the Thai language. Tr. at 68–69. On that date Commerce declined to present further evidence concerning those documents.

**5.** At the August 22, 1989 hearing, the parties also agreed to the redaction of any notes on the documents made by Commerce case analysts.

ing its position in light of this Court's ruling in *Bethlehem Steel*, 13 CIT ——, 718 F.Supp. 70, and that it was withdrawing the argument that all verification exhibits should be exempt from the mandates of section 777(c). Tr. at 38. Instead, Commerce pressed the argument that disclosure should be withheld for documents containing (1) customer and supplier names, and (2) information pertaining to products and producers not under investigation. Tr. at 52–54.[6]

The intervenors claim that a longstanding agency practice of exempting verification exhibits from disclosure, and the legislative history, support the position that Congress did not intend its amendment of section 777 of the Act to include verification exhibits within its scope.

Alternatively, intervenors contend that even if the verification exhibits, (all of which were submitted by intervenors to Commerce), were found to be subject to section 777, there is a clear and compelling need to exempt them from disclosure under the statute. Intervenors point to three types of information contained within the verification exhibits it believes should be withheld from disclosure: (1) confidential internal Thai government documents; (2) foreign government documents covered by foreign secrecy laws; and (3) customer and supplier names.

## DISCUSSION

■ Judicial review in this Court of an administrative agency's denial of a request for access to confidential information under 28 U.S.C. § 1581(f) is evaluated *de novo* on the basis of the record before the Court. *See, Bethlehem Steel*, 13 CIT at ——, 718 F.Supp. at 71 (and citations therein).

"The starting point in every case involving construction of a statute is the language itself." *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir. 1989) (citing, *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 108 S.Ct. 1255, 1258, 99 L.Ed.2d 460 (1988); *United States v. Turk-*

*ette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981)). Absent a clear cut legislative intent contrary to the statutory language, the statutory language is ordinarily regarded as conclusive. *Id.*

Disclosure of business proprietary information before the administrative agency is governed by section 777(c) of the Tariff Act of 1930, recently amended by the Omnibus Trade and Competitiveness Act of 1988. 19 U.S.C. § 1677f(c); Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1332(3), 102 Stat. 1107, 1208–09 (1988). Subsection c, entitled "Limited disclosure of certain proprietary information under protective order," provides in relevant part as follows:

(1) **Disclosure by administering authority of Commission**

(A) **In general**

Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the information requested and sets for the reasons for the request, the administering authority or the Commission shall make *all* business proprietary information presented to, or obtained by it, during a proceeding (*except* privileged information, classified information, and *specific information of a type for which there is a clear and compelling need to withhold from disclosure*) available to interested parties who are parties to the proceeding under a protective order . . . regardless of when the information is submitted during a proceeding.

. . . .

(2) **Disclosure under court order**

If the administering authority denies a request for information . . . , then application may be made to the United States Customs Court for an order directing the administering authority . . . to make the information available. After notification of all parties to the investigation and after an opportunity for a hearing on the

---

**6.** At the first hearing in this case Commerce conceded that all of the documents in question contained business proprietary information. Tr. at 48–50.

record, the court may issue an order, under such conditions as the court deems appropriate, which shall not have the effect of stopping or suspending the investigation, directing the administering authority ... to make all or a portion of the requested information described in the preceding sentence available under a protective order and setting forth sanctions for violation of such order if the court finds that, under the standards applicable in proceedings of the court, such an order is warranted and that—

(A) the administering authority ... has denied access to the information under subsection (b)(1) of this section,

(B) the person on whose behalf the information is requested is an interested party who is a party to the investigation in connection with which the information was obtained or developed, and

(C) the party which submitted the information to which the request relates has been notified, in advance of the hearing, of the request made under this section and of its right to appear and be heard.

19 U.S.C. § 1677f(c), *as amended* by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1332(3), 102 Stat. 1107, 1208–09 (1988) (emphasis added).

On its face, this statute requires that the administering authority "shall make *all* business proprietary information ... available to interested parties ...," upon proper request. *Id.* (emphasis added). It is clear that the statute specifically imposes a duty of disclosure upon the administering agency, unless the agency can meet the exception for "privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure." *Id.; see Komatsu Forklift Mfg. Co. of U.S.A. v. United States*, 13 CIT at ——, 717 F.Supp. 843, 846 (1989).

## I. *Verification Exhibits*

■ In *Bethlehem Steel*, Judge DiCarlo roundly rejected intervenors' arguments that verification exhibits should be exempt from disclosure *per se*, under 19 U.S.C. § 1677f(c). 13 CIT at ——, 718 F.Supp. at 72. In that case, the government argued, (as Commerce did here at the administrative level below), that all verification exhibits should be exempt from disclosure because by their very nature they are comprised of extremely sensitive confidential information which may concern the very heart of a company's internal operating procedures and practices. *Id.* Rejecting this argument, the Court stated "there is no support for categorical denials of access to documents without a proper analysis of whether the documents are privileged or classified, or whether there is a clear and compelling need to withhold disclosure." 13 CIT at ——, 718 F.Supp. at 72.[7]

The legislative history of the 1988 amendments to section 777(c), while of limited utility to this Court, is supportive of this interpretation of the statute based on a reading of its plain language. The House Conference Report supporting the bill provided: "the general rule is that business proprietary information shall be subject to disclosure under administrative protective order; the exceptions authorized are intended to be very narrow and limited exceptions." H.R.Conf.Rep. No. 576, 100th Cong., 2nd Sess. 623 (1988), *reprinted in* 1988 U.S.Code Cong. & Admin.News 1547, 1656. The Conference Report stated that the exception for information for which there is a "clear and compelling need to withhold from disclosure" "is expected to be used rarely, in situations in which substantial and irreparable financial or physical harm may result from disclosure." *Id.*

Intervenors proffer the argument that prior to the 1988 Act amendments to the Tariff Act of 1930, Commerce had a consistent practice of declining to disclose con-

---

**7.** Intervenors argue that *Bethlehem Steel* is not dispositive of this case on this issue because it arose in the context of an antidumping proceeding not a countervailing duty one as herein. Intervenors also claim that *Bethlehem Steel* does not apply because the Court did not pass judg-

ment on whether confidential verification documents provided by a foreign government in a countervailing duty investigation must be disclosed under section 777. This Court has examined these arguments and finds them to be meritless.

fidential verification documents under administrative protective order, and that Congress did not intend to overturn the practice. Intervenors' Brief at 7, 11; Tr. at 30.[8] Intervenors maintain that "[i]n amending Section 777(c), there is no evidence that Congress specifically intended to include confidential verification documents within its scope." Intervenors' Brief at 13. From this assertion intervenors would have this Court read the statute, contrary to its plain meaning, to exclude all verification documents.

It is clear to this Court that if Congress had intended to exclude verification documents from the scope of the statute it could easily have so provided in the plain language of the statute. This Court declines to look beyond the plain meaning of the statutory language and holds in accordance with *Bethlehem Steel* that verification documents are subject to disclosure under section 777(c) unless there is a showing made of a clear and compelling need to withhold disclosure.

## II. *Clear and Compelling Need*

Section 777 clearly imposes the burden of proof upon the administering agency to show that the documents are privileged, classified or "specific information of the type for which there is a clear and compelling need to withhold from disclosure." 19 U.S.C. § 1677f(c)(2); *Bethlehem Steel* 13 CIT at ——, 718 F.Supp. at 72. The statute also allows the party submitting the documents, in this case defendant-intervenors, an opportunity to be heard. 19 U.S.C. § 1677f(c)(2)(C).

The Court notes that there was no testimony or documentary material offered as evidence at either of the hearings on this matter. The only matters heard by the Court were the arguments of the attorneys over questions of the legal interpretation of the statute.[9] Commerce and the intervenors argued to this Court that in this case the clear and compelling need to withhold disclosure of the verification exhibits was an entirely legal question.

### A. *Non–Subject Producers and Product Information*

■ Commerce argued that information relating to producers and products not under investigation should not be disclosed

---

**8.** Intervenors also raise the issue of international comity between the sovereign governments of Thailand and the United States to support its position that confidential foreign government verification documents should not be disclosed. Intervenors argue that it would be a breach of trust and detrimental to future countervailing duty investigations to compel disclosure of the documents, even under a protective order, over the objection of the Royal Thai government. Intervenors' Brief at 21; Tr. at 34.

The Court notes that the Royal Thai government will not be compelled to consent to the release of the business proprietary information contained within the verification documents. The statute allows for the party submitting the documents to withdraw them should the administering agency determine that they are subject to disclosure. See 19 U.S.C. § 1677f(c)(1)(E); 19 C.F.R. § 355.20(a)(4) (1988).

**9.** At the August 16, 1989 hearing, Commerce expressed that it was primarily concerned that it had promised the Thai government it would not allow disclosure of the verification exhibits. The following colloquy took place:

MS. MEEHAN: Your Honor, perhaps I could go over a bit of a history of this case.

When the investigation was initiated and verification took place, it was Commerce's policy not to release under APO [administra-

tive protective order] any verification exhibits. Our position was that there was a clear and compelling need to withhold such documents due to their highly confidential nature and they [sic] essentially substantiate [sic] function. We received the documents from the Thai Government and from the respondents with assurances they would not be released under APO because it was our policy, ... that's how we got the documents. After the plaintiffs filed this action challenging Commerce's denial of access to the exhibits under APO, the case of Bethlehem Steel arose.

. . . .

THE COURT: At this juncture I am hearing from you that the clear and compelling reason why these materials should not be disclosed to the plaintiffs in this case is that the Government has made a representation to the Government of Thailand and has made a representation to the various companies involved that they would not be disclosed, and that seems to be what you are saying to me is the only reason; is that correct?

MS. MEEHAN: That's the reason why we have not given them out already under APO.

Tr. at 37, 40–41.

due to its highly confidential nature and irrelevancy to the investigation. Tr. at 46, 50–51. This same argument was rejected by the Court in *Bethlehem Steel* where Judge DiCarlo found that

> a general objection on the grounds of relevancy to the investigation did not rise to a clear and compelling need to adopt a categorical rule against disclosure of verification documents. The possibility that exhibits may contain information on other products in addition to products under investigation is an insufficient basis to support a general rule against disclosure. If the Court were to adopt a contrary rule, a foreign producer could always prevent disclosure of exhibits merely by submitting documents which contained data for irrelevant products.

13 CIT at ——, 718 F.Supp. at 73. While *Bethlehem Steel* arose in the context of an antidumping investigation, the same rationale holds true for countervailing duty investigations. Additionally, this Court has serious difficulty with Commerce's argument that the information sought would be irrelevant in a countervailing duty investigation when issues such as the general availability and industry specificity of the alleged subsidies may be of central importance. *See generally*, 19 U.S.C. § 1677(5)(B).

As to the highly confidential nature of the information, the statute does not exempt information upon such a showing alone. Congress has provided safeguards against unauthorized disclosures of the information which include administrative protective orders as well as any additional sanctions as this Court may order. *See* 19 U.S.C. § 1677f(c)(2) *as amended* by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1332(3), 102 Stat. 1107, 1208–09 (1988). As this Court in *Komatsu Forklift Mfg. Co.* stated, "[t]he mere possibility that information could be inadvertently disclosed under an [administrative protective order] is not enough to overcome the statutory policy favoring disclosure." 13 CIT at ——, 717 F.Supp. at 846.

### B. *Documents Governed by Foreign Secrecy Laws or Confidentiality Rules*

■ Intervenors argue there is a clear and compelling need to prevent disclosure of confidential foreign government documents and foreign government documents protected by foreign secrecy laws. Intervenors' Brief at 27. In addition to the argument that the doctrine of international comity between sovereign states should preclude disclosure of foreign government documents, intervenors claim that disclosure would result in the "widespread dissemination" to private parties in the United States of internal Thai government documents through the routine disclosure to the attorneys, staffs and consultants under an administrative protective order. Tr. at 35. Intervenors seem to be concerned that internal Thai government policies and procedures will thereby become known to private parties in the United States.

However, the intervenors did not introduce any evidence or offer any proof as to how these concerns rise to the level of clear and compelling need to withhold disclosure. Nor did intervenors introduce any evidence as to the nature of the Thai security laws. Furthermore, this Court notes that Congress has provided the Thai or any other government the opportunity to prevent disclosure of any of the documents. Under 19 U.S.C. § 1677f(c)(1)(E) and the corresponding regulations, the party submitting business proprietary information must be given the opportunity by the administering agency to withdraw the documents upon notification that they will be released under a protective order. 19 C.F.R. § 355.20(a)(4) (1988). The possibility that the decision to withdraw the documents may result in the administering agency utilizing the best information available exhibits Congress' awareness that sovereign nations must be allowed some control over their participation in countervailing duty investigations.

### C. *Customer and Supplier Names*

Commerce and intervenors also argued that customer and supplier names should

be withheld from disclosure under the statute. Tr. at 28, 45; Intervenors' Brief at 30. Though it appears that customer and supplier names may be exempted from disclosure in certain, if not all circumstances under section 777, this Court need not reach this issue since all the parties agreed to their redaction from the documents. *See Bethlehem Steel* 13 CIT at ——, 718 F.Supp. at 73.

### III. *Stay Application*

At the second hearing in this case on August 22, 1989 the intervenors moved for a stay of this Court's Order pending appeal. Intervenors claim that without the imposition of a stay pending appeal the issues would become moot and thus deprive them of full appellate review. Memorandum Of Points And Authorities In Support Of Defendant–Intervenors' Motion For Stay Pending Appeal at 5.

▇▇ The standard for determining whether this Court should grant a stay is similar to the standard for granting a preliminary injunction. *Fundicao Tupy S.A. v. United States,* 12 CIT ——, 696 F.Supp. 1525 (1988); *Philipp Brothers, Inc. v. United States,* 10 CIT 448, 640 F.Supp. 261 (1986); *American Grape Growers v. United States,* 9 CIT 505 (1985). It is appropriate to grant the stay when the movant establishes: (1) immediate and irreparable harm will result in the absence of the stay; (2) a likelihood of success on the merits; (3) the issuance of a stay will not substantially harm other parties interested in the proceeding, and; (4) the public interest would be better served by granting the stay. A failure to establish any one of the criteria precludes granting the application. *S.J. Stile Assocs., Ltd. v. Snyder,* 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981).

▇▇ This Court determines that the intervenors have not made a sufficient showing that immediate and irreparable harm will befall them in the absence of this Court's issuance of a stay. There has been no showing that the sanctions imposed for violation of the protective order will be anything but sufficient to maintain confidentiality. The possibility of inadvertent disclosure of the information to unauthorized third parties has not been shown to rise to the level of immediate irreparable harm. Furthermore, if a party wishes to withdraw the material, as shown above, that relief is available administratively.

Congress has expressed its intent that these proceedings should proceed with expedition. This Court is of the opinion a stay would unnecessarily delay these proceedings. Nevertheless, the Order implementing this opinion will be made effective eleven (11) days from the date of this opinion, to permit any of the parties to make any application to the Court of Appeals for the Federal Circuit they deem appropriate.

### CONCLUSION

On the basis of the foregoing, plaintiffs' application for an order affirming their right to access to the verification exhibits and directing the International Trade Administration to grant them such access under an administrative protective order is granted, except as to portions of the documents the parties have agreed to redact. This Court holds that there has been no showing that verification exhibits are exempt from the mandates of 19 U.S.C. 1677f and no showing that there is a clear and compelling need to withhold disclosure of any of the documents. The Department of Commerce, International Trade Administration, is directed to release to plaintiffs the confidential business proprietary information utilized by Commerce for verification of the questionnaire responses in the administrative review for 1987 of the countervailing duty order in *Circular Welded Carbon Steel Pipes and Tubes From Thailand* (Inv. No. C–549–501). The intervenors' motion for a stay of this order is denied.

### JUDGMENT

This case having been duly submitted for decision, for the reasons set forth in the memorandum the Court has filed herewith, it is hereby

ORDERED that the plaintiffs' application for access to confidential information

under protective order is granted; and it is further

ORDERED that eleven days after the date of this order, on September 11, 1989, the Department of Commerce, International Trade Administration, after having provided to the submitting parties any opportunity to withdraw the exhibits that may be granted under its regulations or 19 U.S.C. § 1677f, shall provide to counsel for plaintiffs under administrative protective order all verification exhibits and business proprietary information contained therein in the subject administrative review of the countervailing duty order involving Circular Welded Carbon Steel Pipes and Tubes from Thailand (Inv. No. C–549–501); and it is further,

ORDERED that the names of customers and suppliers and the notes of the case analysts will be redacted before the relevant exhibits are disclosed to plaintiffs' counsel; and it is further

ORDERED that defendant-intervenors' application for a stay pending appeal is denied.