898 F.2d 780
 11 ITRD 2457
 ALLIED TUBE & CONDUIT CORP., Sawhill Div., Cyclops Corp. and
Wheatland Tube Co., Plaintiffs-Appellees,
v.
The UNITED STATES, Defendant-Appellee,
and
The Royal Thai Government, Saha Thai Steel Pipe Co., Ltd.,
Siam Steel Pipe Import-Export Co., Ltd., Thai
Union Steel Co., Ltd. and Thai Hong
Steel Pipe Co., Ltd.,
Defendants-Appellants.
 No. 89-1708.
 United States Court of Appeals,
Federal Circuit.
 March 13, 1990.
 
 Mark C. Del Bianco, Schagrin Associates, Washington, D.C., argued, for plaintiffs-appellees. With him on the brief were Roger B. Schagrin and Paul W. Jameson.
 Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Jane E. Meehan, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief, for defendant-appellee. Also on the brief were Wendell L. Willkie, II, Gen. Counsel, Stephen J. Powell, Chief Counsel for Import Admin. and Anne W. White, Attorney-Adviser, Office of the Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., of counsel.
 Arthur J. LaFave, III, Willkie Farr & Gallagher, Washington, D.C., argued, for defendants-appellants. With him on the brief were William H. Barringer and Daniel L. Porter.
 Mark B. Feldman, Feith & Zell, P.C., Washington, D.C., was on the brief, for amici curiae, Government of Philippines, et al.
 Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., and Jessica Wasserman, Stewart & Stewart, Washington, D.C., were on the brief, for amicus curiae, Torrington Co.
 Paul C. Rosenthal and Kathleen Weaver Cannon, Collier, Shannon & Scott, Washington, D.C., were on the brief, for amicus curiae, American Bass, et al.
 Before MARKEY, Chief Judge, MAYER, Circuit Judge, and DUFF, District Judge.*
 MAYER, Circuit Judge.
 
 OPINION
 
 1
 The Royal Thai Government, Saha Thai Steel Pipe Co., Ltd., Siam Steel Pipe Import-Export Co., Ltd., Thai Union Steel Co., Ltd. and Thai Hong Steel Pipe Co., Ltd. appeal an order of the United States Court of International Trade granting the application of Allied Tube and Conduit Corp., Sawhill Div., Cyclops Corp. and Wheatland Tube Co. for disclosure under administrative protective order of verification exhibits collected by the Department of Commerce during the administrative review for 1987 of a countervailing duty order involving circular welded carbon steel pipe and tube from Thailand. We affirm.
 
 BACKGROUND
 
 2
 As part of the administrative review of its countervailing duty order,[1] the International Trade Administration (ITA) of the United States Department of Commerce conducted a verification of the questionnaire responses submitted by the Royal Thai Government and Thai steel producers and exporters (respondents). The verification was conducted in Thailand. The ITA reviewed respondents' documents to corroborate the information provided in their questionnaire responses. During the verification procedure, the ITA requested and received courtesy copies of some Thai government and company documents for use in preparing the verification report and to allow more time for the ITA to analyze the data contained in the documents.
 
 
 3
 Allied Tube and Conduit Corp. and the other petitioners in the countervailing duty investigation (petitioners) filed an application for disclosure of business proprietary information under administrative protective order pursuant to 19 U.S.C. Sec. 1677f(c)(1)(A) (Supp. II 1984), as amended by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, Sec. 1332(2)(A), 102 Stat. 1107, 1207 (1988) (the 1988 Act).[2] The request for disclosure encompassed verification exhibits.[3] The ITA denied petitioners' application, stating that the "1988 Act contains no specific reference to the release of verification exhibits and, therefore, there is no specific mandate to release verification exhibits," and that "[w]e believe there is a clear and compelling need to withhold release of verification exhibits."
 
 
 4
 Petitioners then applied to the Court of International Trade for an order directing the ITA to release the verification exhibits. 19 U.S.C. Sec. 1677f(c)(2) (1982), as amended by the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, Sec. 1332(3), 102 Stat. 1107, 1208 (1988).[4] Respondents intervened, arguing that verification exhibits do not fall within the disclosure requirement of section 1677f(c)(1)(A) or that there is a clear and compelling need to withhold disclosure. The Department of Commerce originally opposed release of the exhibits, taking the position that they were exempt from disclosure. During the hearing before the trial court, however, Commerce conceded that verification exhibits were not exempt and argued only that documents containing customer and supplier names and information relating to products and producers not under investigation should be withheld.
 
 
 5
 After examining the requested documents in camera, the court granted petitioners' application for disclosure, except for items redacted by agreement of the parties. Allied Tube & Conduit Corp. v. United States, 721 F.Supp. 305 (Ct.Int'l Trade 1989).[5] The court held that verification exhibits as a class are not exempt from disclosure under section 1677f(c)(1)(A) and that no clear and compelling need to withhold disclosure had been shown.
 
 DISCUSSION
 A.
 
 6
 Whether verification exhibits are covered by section 1677f(c)(1)(A) is a question of statutory construction. "In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' " United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The language of section 1677f(c)(1)(A) is unequivocal. "[T]he administering authority ... shall make all business proprietary information presented to, or obtained by it, during a proceeding ... available to interested parties ... under a protective order...." The language, "all business proprietary information," is all-encompassing. That it covers exhibits presented or obtained during verification is confirmed by the words "regardless of when the information is submitted during a proceeding."
 
 
 7
 Section 1677f(c)(1)(A) provides specific exceptions only for "privileged information, classified information and specific information of a type for which there is a clear and compelling need to withhold from disclosure." If Congress had intended to exclude verification exhibits, it could have included them among the specific exceptions to the disclosure requirement. Consumer Prod. Safety Comm'n v. GTE Sylvania, 447 U.S. at 109, 100 S.Ct. at 2056.
 
 
 8
 In support of their position that verification exhibits are not covered by section 1677f(c)(1)(A), respondents argue that the ITA has had a long-standing policy of protecting them from disclosure and there is no evidence that Congress intended to change that policy by the 1988 Act. This argument belies the clear meaning of the statutory provision, and the legislative history carries no implication of any congressional intent to the contrary.
 
 
 9
 To be sure, in several previous countervailing duty and antidumping investigations, the ITA refused to release verification exhibits under administrative protective order. See, e.g., Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Taiwan, 54 Fed.Reg. 15496 (1989). But the Commerce Department has now changed its position. See Allied Tube & Conduit Corp. v. United States, 721 F.Supp. at 308. Although the government submitted a brief in this court, it merely recited factual background without any argument that verification exhibits are exempt from section 1677f(c)(1)(A). This suggests the ITA has concluded that the 1988 Act mandates a change in its practice.
 
 
 10
 The legislative history of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, Sec. 1332(2)(A), 102 Stat. 1107, 1207 (1988), supports the conclusion reached from the statutory language, that verification exhibits are not excluded from the mandatory disclosure requirement. Section 1332(2)(A) of the 1988 Act, which amended 19 U.S.C. Sec. 1677f(c)(1)(A),[6] was the result of a conference agreement in which House and Senate proposals, section 158 of H.R. 3 and section 327 of S. 490, respectively, were essentially merged. See H.R.Conf.Rep. No. 100-576, 100th Cong., 2nd Sess. 623 (1988), reprinted in 1988 U.S.Code Cong. & Admin.News 1547, 1656.
 
 
 11
 The Senate bill focused on the disclosure of information submitted to the International Trade Commission (ITC) during injury investigations; the proposal would have made disclosure of proprietary information by the ITC mandatory, leaving disclosure by the Department of Commerce (ITA) permissive. S.Rep. No. 100-71, 100th Cong., 1st Sess. 111, 376 (1987). Thus, the history of the Senate bill is of little relevance to the issue in this case.
 
 
 12
 The House bill, on the other hand, was intended to expand the scope of business proprietary information disclosed by the ITA. The House Report specifically mentions verification documents, indicating that they are covered by the proposed disclosure provision:
 
 
 13
 Although the administering authority [ITA] will still retain a limited amount of discretion to refuse to release certain types of information that are not relevant to dumping or subsidy determinations, it is the Committee's intent that, as a general rule most business proprietary information will be releasable under protective order. Particular exceptions might include trade secrets, customer names, and the names of consulting firms conducting market research. The stage in the proceeding at which the information is provided to the administering authority, e.g., at verification, is not dispositive of whether the administering authority must release the information.
 
 
 14
 H.R.Rep. No. 100-40, Part 1, 100th Cong., 1st Sess. 140 (1987) (emphasis added).
 
 
 15
 Except for changing the operative verb from "may" to "shall" and adding the "clear and compelling need" standard for discretionary withholding of information in the House proposal for amending section 1677f(c)(1)(A), the conference committee incorporated this proposal essentially unaltered in the conference bill that was eventually passed. See Id. at 418. Therefore, the clearly expressed intent not to except verification exhibits from the disclosure requirement can be attributed to Congress as a whole and is consistent with the plain meaning of section 1677f(c)(1)(A): documents obtained at verification are included within its scope.
 
 B.
 
 16
 Seven of the verification exhibits at issue are Thai government documents. Respondents argue that, even if the verification exhibits obtained from the company respondents are covered by section 1677f(c)(1)(A), disclosure of the Thai government documents is not required because, while they contain confidential commercial information, they are not "business proprietary."
 
 
 17
 The word "business" was added to the term "business proprietary information" with the passage of the 1988 Act, but there is no reason to suppose that Congress intended mandatory disclosure of confidential information to be limited to that received from businesses as opposed to foreign governments. There is no suggestion in the legislative history that the word "business" was meant to be restrictive of the source of proprietary information, rather than merely descriptive of the type of information to which mandatory disclosure applies. Once again, if Congress had intended to make an exception for business proprietary information obtained from foreign governments, it could have included that among the stated exceptions to section 1677f(c)(1)(A). "Where Congress explicitly enumerates certain exceptions to a general [requirement], additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." Andrus v. Glover Constr. Co., 446 U.S. 608, 616, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980).
 
 
 18
 Before receiving copies of the government documents, the ITA assured the Thai government that the documents would not be disclosed under administrative protective order. But government employees have no authority to commit the government to actions that contravene a statute. Heckler v. Community Health Servs. of Crawford, 467 U.S. 51, 63 & n. 17, 104 S.Ct. 2218, 2225 & n. 17, 81 L.Ed.2d 42 (1984). The assurances are not binding because they were impermissible as a matter of law when made.
 
 
 19
 By subjecting proprietary business information to the disclosure requirement of section 1677f(c)(1)(A) without regard to source, we are not insensitive to international comity, the obligation to respect the sovereign interests of a foreign state. The sovereign interests arguably at stake here include maintaining the confidentiality of the Thai government's decision-making process and upholding its secrecy laws. But these interests are adequately protected by an administrative protective order or by the procedures for classification of foreign government information. We are not leaving the Thai government with a "Hobson's choice" between disclosing the verification exhibits and risking that the ITA will use the "best information available"[7] in determining the amount of the countervailing duty if the Thai government refuses to release the exhibits.[8]
 
 
 20
 The Thai government has the option of seeking classification of the information provided to the ITA. Section 1677f(c)(1)(A) specifically exempts classified information from mandatory disclosure under a protective order. Classified information is defined in 19 C.F.R. Sec. 355.4(d) (1989) as that classified under Executive Order No. 12356 of April 2, 1982 (43 Fed.Reg. 28949). See 3 C.F.R. 166 (1983). That order in turn prescribes a uniform system for classifying national security information, including information provided by a foreign government. Exec.Order No. 12356, Secs. 1.3(a)(3), 6.1(d), 3 C.F.R. at 168.
 
 
 21
 The Department of Commerce has issued regulations under section 1677f(c)(1)(B) (1982) governing administrative protective orders and their enforcement. By 19 C.F.R. Sec. 355.34(b)(3)(i), (ii) (1989), a party requesting disclosure of proprietary information must undertake not to disclose the information to anyone outside the administrative protective order (except to the submitter of the information) and to use the information solely for the segment of the proceeding in which it was submitted. Under 19 C.F.R. Secs. 354.1 et seq. (1989), persons determined to have violated a protective order may be subjected to sanctions, including disbarment from practice before the ITA. We have not been shown why these regulations are not sufficient protection for the interests of foreign governments that submit proprietary information.
 
 
 22
 Even ignoring the protection afforded by classification procedures and administrative protective orders, international comity cannot support a blanket rule against disclosure of foreign government verification exhibits in countervailing and antidumping duty investigations. Comity must be applied on a case-by-case basis with a particularized analysis of the content of each document, the foreign interests that could be compromised by disclosure and the effectiveness of an administrative protective order in protecting those interests. See Societe Nationale Industrielle Aerospatiale v. U.S. District Court, 482 U.S. 522, 544, 107 S.Ct. 2542, 2555, 96 L.Ed.2d 461 (1987). Respondents have asked only for a general exclusion for the Thai government documents without showing the specific government interest that could be compromised by disclosure under protective order of any particular piece of information. The trial court examined all of the documents in camera and found no reason to withhold any of them from disclosure. We have been given no reason to do otherwise.
 
 C.
 
 23
 Finally, respondents argue that the "unique role" of verification exhibits as secondary source documents, their sensitivity, and the potential "chilling effect" on the ITA's ability to secure courtesy copies in the future establish a clear and compelling need to withhold the verification exhibits from disclosure. But respondents did not demonstrate that either the Thai government documents or the documents received from Thai companies fall within the "clear and compelling need" exception to the disclosure requirement of section 1677f(c)(1)(A). The exception is for "specific information". It does not support a universal rule exempting either verification documents generally or those obtained from foreign governments from disclosure. A clear and compelling need must be shown for each individual piece of information.
 
 
 24
 The Conference Report accompanying the 1988 Act supports a restricted application of the clear and compelling need exception:
 
 
 25
 [T]he exceptions authorized are intended to be very narrow and limited exceptions.... The third exception ("specific information for which there is a clear and compelling need to withhold from disclosure") is expected to be used rarely, in situations in which substantial and irreparable financial or physical harm may result from disclosure.
 
 
 26
 H.R.Conf.Rep. No. 100-576, 100th Cong. 2nd Sess. 623 (1988), reprinted in 1988 U.S.Code Cong. & Admin.News 1656. Here respondents have shown no clear and compelling need to withhold any specific information not already redacted from the government and company documents.
 
 
 27
 Even though the function of verification is to corroborate information provided in questionnaire responses, verification exhibits often contain information not contained in the responses. The new information may be crucial to petitioners' ability to evaluate the accuracy and correctness of the ITA's verification report and the ultimate countervailing or antidumping duty determination. Verification exhibits may contain price and sales information for products not under investigation as well as other sensitive detailed information about business transactions and operations. Irrelevant information may be redacted to the extent possible, but the presence of such information in requested documents is not grounds for refusing their disclosure. The administrative protective order is intended to prevent disclosure of all sensitive business proprietary information, whether or not related to the product under investigation, to persons other than petitioners' counsel, and to prohibit use of all disclosed information for any purpose other than in that part of the proceeding for which it was submitted.
 
 
 28
 Respondents' "chilling effect" argument is likewise unpersuasive. The government has apparently abandoned its earlier position that release of verification exhibits would impair the ITA's ability to obtain courtesy copies of verification exhibits in the future. In any event, Congress was not impressed by that concern: "An expectation on the part of the Commerce Department or the Commission ... that disclosure of a certain type of information would have a 'chilling effect' on its efforts to collect data clearly does not establish a 'clear and compelling need to withhold from disclosure'." Id.
 
 CONCLUSION
 
 29
 Accordingly, the judgment of the Court of International Trade is affirmed.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Brian Barnett Duff, District Judge, United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [1]
 A countervailing duty order may be issued pursuant to 19 U.S.C. Secs. 1303 (1982) and 1671 et seq. (1982 & Supp. II 1984) whenever a foreign country pays or bestows a bounty or grant on the manufacture, production or export of any article produced in that country, the countervailing duty being equal to the net amount of the bounty or grant
 
 
 [2]
 "Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the information requested and sets forth the reasons for the request, the administering authority or the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure) available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding." (Hereafter, references to section 1677f(c)(1)(A) are to the amended provision.)
 
 
 [3]
 The only documents at issue are the courtesy copies obtained by the ITA during verification. Petitioners have not requested disclosure of other documents examined by the ITA in Thailand but not copied or retained. This opinion does not address these other documents; "verification exhibits" or "verification documents" refers only to the courtesy copies obtained by the ITA
 
 
 [4]
 Section 1677f(c)(2) provides in part: "If the administering authority denies a request for information under paragraph (1), then application may be made to the United States Customs Court for an order directing the administering authority or the Commission to make the information available."
 
 
 [5]
 The Court of International Trade also denied petitioners' application for a stay pending appeal, but their application to this court was granted on September 15, 1989
 
 
 [6]
 Prior to the 1988 amendment, 19 U.S.C. Sec. 1677f(c)(1)(A) (Supp. II 1984) provided: "Upon receipt of an application, (before or after receipt of the information requested) which describes with particularity the information requested and sets forth the reasons for the request, the administering authority and the Commission may make proprietary information submitted by any other party to the investigation available under a protective order described in subparagraph (B)."
 
 
 [7]
 The "best information available" rule is stated in 19 U.S.C. Sec. 1677e(b) (1982): "In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available."
 
 
 [8]
 The consequences of such a refusal are provided in section 1677f(c)(1)(E) added by the 1988 Act: "If a person submitting information to the administering authority refuses to disclose business proprietary information which the administering authority determines should be released under a protective order ... the administering authority shall return the information, and any nonconfidential summary thereof, to the person submitting the information and summary and shall not consider either."