Slip Op. 10-130

# UNITED STATES COURT OF INTERNATIONAL TRADE

-------------------------------------------------------x
      :
      :
CARPENTER TECHNOLOGY      :
CORPORATION and VALBRUNA      :
SLATER STAINLESS, INC.,      :
      :
      Plaintiffs,      :
      :         **Before: Judith M. Barzilay, Judge**
      v.      :         **Court No. 09-00439**
      :         **Public Version**
UNITED STATES,      :
      :
      Defendant.      :
      :
-------------------------------------------------------x

# OPINION

[The court denies Plaintiffs' Motion for Judgment Upon the Agency Record.]

*Kelley Drye & Warren, LLP* (*Laurence J. Lasoff*, *Mary T. Staley*, *Grace W. Kim*) for Plaintiffs Carpenter Technology Corporation and Valbruna Slater Stainless, Inc.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*David D'Alessandris*); *George Kivork*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for Defendant.

Dated: November 23, 2010

Barzilay, Judge: Plaintiffs Carpenter Technology Corporation ("Carpenter") and

Valbruna Slater Stainless, Inc., (collectively, "Plaintiffs") move for judgment on the agency

record, challenging aspects of the U.S. Department of Commerce's ("Commerce" or "the

Department") determination in *Stainless Seel Bar from India*, 74 Fed. Reg. 47,198 (Dep't of

Commerce Sept. 15, 2009) (final admin. review) ("*Final Results*").[1]  Specifically, Plaintiffs

present three arguments:  (1) that the Department unlawfully refused to rely on certain double-

bracketed business proprietary information in the *Final Results*; (2) that Commerce should have

found foreign producer Venus Wire Industries Pvt. Ltd. ("Venus") and domestic purchaser AMS

Specialty Steel ("AMS") to be affiliated during the period of review; and (3) that the agency

should have applied adverse facts available ("AFA") to Venus.  Pls. Br. 13-37.  For the reasons

below, Plaintiffs' arguments fail, and the court denies their motion for judgment on the agency

record.

### I. Background & Procedural History

In 1995, Commerce issued an antidumping duty order on stainless steel bar from India.

*Stainless Steel Bar from Brazil, India and Japan*, 60 Fed. Reg. 9661 (Dep't of Commerce Feb.

21, 1995) (antidumping duty orders).  Over a decade later, after receiving a timely request from

Carpenter, the Department initiated an administrative review of Venus.  *Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews, Requests for Revocation in Part,*

*and Deferral of Administrative Review*, 73 Fed. Reg. 16,837 (Dep't of Commerce Mar. 31,

2008).

As a part of its review, Commerce asked Venus to answer various questionnaires.  In its

responses, Venus, which has participated in the review without counsel, referred to AMS as an

unaffiliated customer and reported the export price of the subject merchandise that it sold to

AMS.  J.A. 63, 117.  In response, Carpenter submitted comments to the Department which

---

[1] The period of review runs from February 1, 2007 to January 31, 2008.  *Final Results*, 74
Fed. Reg. at 47,198.

averred that AMS acted as a sales agent for Venus, pointing to the presence of AMS's customer names on purchase orders sent to Venus. J.A. 130. Venus replied, stating that formatting purchase orders in this manner allows it to fulfill the technical specifications, labeling, and marketing requested by AMS's customers. J.A. 270-71. Venus also insisted that intermediate customers regularly provide steel suppliers with the names of the products' final third-party customers. J.A. 271. To eliminate confusion over its purported affiliations, Venus further highlighted that it had no commission agreement with AMS. J.A. 270.

Carpenter responded to this information by submitting 44 pages of comments, including 15 pages of double bracketed proprietary evidence that it believed demonstrated a principal/agent relationship between Venus and AMS. J.A. 325-69. Pursuant to 19 U.S.C. § 1677f(b)(1)(B) and 19 C.F.R. § 351.304(a)-(b), the Department could not release the proprietary information to Venus.[2] Consequently, the agency notified Carpenter that it would not base its determination on the double bracketed information because of due process concerns, since Venus could not respond to the allegations against it. *See* J.A. 522-25.

In March 2009, Commerce published its preliminary results, *Stainless Steel Bar from India*, 74 Fed. Reg. 9787 (Dep't of Commerce Mar. 6, 2009) (prelim. admin. review), and issued

---

[2] The statute states, in relevant part, that

The administering authority . . . shall require that information for which proprietary treatment is requested be accompanied by . . .(ii) either (I) a statement which permits the administering authority or the Commission to release under administrative protective order, in accordance with subsection (c), the information submitted in confidence, or (II) a statement to the administering authority or the Commission that the business proprietary information is of a type that should not be released under administrative protective order.

§ 1677f(b)(1)(B). Section 351.304(a)-(b) parallels the statute's directives. *See* § 351.304(a)-(b).

its final results six months later.[3]  *See generally Final Results*; *see also Issues and Decision Memorandum for 2007-2008 Antidumping Duty Administrative Review of Stainless Steel Bar from India*, A-533-810 (Dep't of Commerce Sept. 2, 2009) ("*Issues & Decision Mem.*").  The Department determined that AMS acted as an independent reseller and, therefore, did not qualify as an affiliate of Venus.  *Final Results*, 74 Fed. Reg. at 47,199; *Issues & Decision Mem.* at 7-10.  Commerce based its conclusions about the use of Carpenter's double bracketed information on the same due process concerns as before.  *Issues & Decision Mem.* at 31-32.  Finally, Commerce declined to apply AFA to Venus because the agency found that it had the relevant information necessary to make accurate calculations and that any minor deficiencies in Venus's submissions did not impede the review or show that the company failed to act to the best of its ability.  *Id.* at 11-22.

### II. Subject Matter Jurisdiction & Standard of Review

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c).  The court will disturb a Commerce determination only when "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence on the record constitutes "less than a preponderance, but more than a scintilla."  *Novosteel SA v. United States*, 25 CIT 2, 6, 128 F. Supp. 2d 720, 725 (2001) (citation & quotation marks omitted), *aff'd*, 284 F.3d 1261 (Fed. Cir. 2002).  The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of the entire record, including "whatever fairly detracts from the

---

[3] During the intervening period, the Department again advised Carpenter that it would not use the substantive allegations contained in its double bracketed submissions in the *Final Results* because of due process concerns.  J.A. 522-25.

substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote & quotation marks omitted). This standard necessitates that the Department thoroughly examine the record and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation & quotation marks omitted); *accord Bando Chem. Indus., Ltd. v. United States*, 16 CIT 133, 136-37, 787 F. Supp. 224, 227 (1992). That the court may draw two inconsistent conclusions from the evidence does not preclude Commerce from supporting its determination with substantial evidence. *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999).

### III. Discussion

**A. Commerce's Refusal to Use Plaintiffs' Double Bracketed Submissions**

A party to an administrative proceeding may submit two types of business proprietary information to Commerce. *See generally* 19 U.S.C. § 1677f(b); 19 C.F.R. § 351.304(a). If a submitting party sets off the proprietary information with single brackets, then Commerce discloses it during the course of the proceedings to all interested parties under an administrative protective order. § 1677f(b)(1)(B)(ii)(I) & (c); § 351.304(b)(1); *see Allied Tube & Conduit Corp. v. United States*, 898 F.2d 780, 783 (Fed. Cir. 1990). The Department does not release the second type of information, which a party submits with double brackets, to interested parties under any circumstances. § 1677f(b)(1)(B)(ii)(II); § 351.304(b)(2); *see Allied Tube & Conduit Corp.*, 898 F.2d at 783.

Plaintiffs challenge Commerce's refusal to consider the double bracketed information they submitted to demonstrate that Venus and AMS had a principal/agent relationship. Pls. Br.

27 (citing J.A. 325-69).  Although Plaintiffs chose to make this information exempt from release under an administrative protective order, and therefore unavailable for Venus or any other interested party's viewing, Plaintiffs insist that "nothing in the statute or regulations permits the Department to disregard this information" once placed on the record.  Pls. Br. 28.

This claim has no legal merit.  Although the relevant statute and related regulations permit a party to submit business proprietary information not subject to release under an administrative protective order, Congress intended these exceptions "to be very narrow and limited" and "to be used rarely, in situations in which substantial and irreparable financial or physical harm may result from disclosure."  *Allied Tube & Conduit Corp.*, 898 F.2d at 786 (quoting H.R. Rep. No. 100-576 at 85 (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1656); *see Issues & Decision Mem.* at 31-32.  In this case, however, Plaintiffs did not narrowly tailor their submissions to conceal, for example, the identity of market researchers, information sources, or customer names; rather, the submissions contained wholesale allegations challenging the truthfulness of Venus's questionnaire responses.  *See, e.g.*, J.A. 346-47, 353-63, 365-67.  This fact, in conjunction with Congess's mandate that substantive information submitted to Commerce during the course of the proceeding shall be subject to comment by other parties, supports the Department's refusal to countenance the information in the *Final Results*. 19 U.S.C. § 1677m(g); *accord Issues & Decision Mem.* at 31-32.  If Commerce had relied upon Plaintiffs' double bracketed submissions, it would have unlawfully deprived Venus of its statutory right to comment on the allegations against it.  *See* § 1677m(g); *Mid Continent Nail Corp. v. United States*, 34 CIT __, __, 712 F. Supp. 2d 1370, 1375 (2010) ("Congress has provided a fair process for commenting within the statutory language of 19 U.S.C. § 1677m."

(citation omitted)); *cf. Atar, S.r.L. v. United States*, 33 CIT __, __, 637 F. Supp. 2d 1068, 1084

(2009) (affirming Commerce's decision not to use business proprietary information to make

calculation when doing so would make information public).  The Department's decision not to

use Plaintiffs' double bracketed submissions in its determination comports with the relevant

statute and controlling regulations, and the court affirms the Department's decision.

**B. The Department's Finding of No Principal/Agent Relationship**

In the antidumping context, Congress has defined "affiliated persons," in relevant part, as

"[a]ny person who controls any other person and such other person."  19 U.S.C.

§ 1677(33)(G); *accord* 19 C.F.R. § 351.102(b)(3).  The requisite control exists "if the person is

legally or operationally in a position to exercise restraint or direction over the other person."

§ 1677(33); *accord Chia Far Indus. Factory Co. v. United States*, 28 CIT 1337, 1348 n.9, 343 F.

Supp. 2d 1344, 1357 n.9 (2004) (citing *Uruguay Round Agreements Act, Statement of*

*Administrative Action*, H.R. Doc. No. 103316, vol. 1, at 838 (1994), *reprinted in* 1994

U.S.C.C.A.N. 4040, 4174-75).  When determining whether parties qualify as affiliated in the

absence of an explicit agency agreement, Commerce examines the totality of the circumstances

and considers

> 1) the foreign producer's role in negotiating price and other terms of sale;
> 2) the extent of the foreign producer's interaction with the U.S. customer;
> 3) whether the agent/reseller maintains inventory;
> 4) whether the agent/reseller takes title to the merchandise and bears the risk of loss;
> 5) whether the agent/reseller further processes o[r] otherwise adds value to the merchandise;
> 6) the means of marketing a product by the producer to the U.S. customer in the pre-sale period; [and]
> 7) whether the identity of the producer on sales documentation inferred such an agency relationship during the sales transaction.

*Chia Far Indus. Factory Co.*, 28 CIT at 1349 n.10, 343 F. Supp. 2d at 1358 n.10 (citation omitted); *see id.* at 1350, 343 F. Supp. 2d at 1358 (quotation omitted) (citing § 351.102) (listing similar set of four factors agency may consider in affiliated persons evaluation).

Plaintiffs contend that the Department improperly found no *de facto* principal/agent relationship between Venus and AMS.[4] *See* Pls. Br. 10-11, 16-24.  In their brief, Plaintiffs trace the seven-part test delineated above and state that each factor suggests that such a relationship existed between the companies.  On the first prong, they claim that "the only evidence on the record show[s] that Venus [] was actively involved in the negotiations by AMS with the ultimate U.S. customer." Pls. Br. 17.  According to Plaintiffs, Venus [[ had influence over AMS

]].  Pls. Br. 18 (citing J.A. 345-69, 380-81, 491-500, 502-07).  Plaintiffs next highlight, in examining the second prong, that Venus interacted with final, third-party U.S. customers, Pls. Br. 19 (citing J.A. 130, 143-62), and that Venus even directly contacted them on multiple occasions.  Pls. Br. 19 (citing J.A. 364-69).  To bolster their argument that Venus had significant interactions with AMS's domestic customers, Plaintiffs specifically point to AMS's custom of providing Venus with the names AMS's customers.  Pls. Br. 19.  Plaintiffs believe that AMS had "no commercial reason" to disclose its U.S. customers to Venus if the two companies truly conducted their transactions at arm's-length.  Pls. Br. 19 n.29 ("[T]he only reason for AMS to divulge the customer's identity to Venus [] is that AMS was acting primarily for the benefit of Venus [] and not itself.").  With respect to the third factor, Plaintiffs note that AMS did not

---

[4] Plaintiffs concede that Venus and AMS do not have a *de jure* principal/agent relationship, Pls. Br. 10, 16, 26, as "a written agency relationship and evidence of formal commission payments d[o] not exist on the record."  Pls. Br. 10.

maintain inventory of the subject merchandise and had it shipped to the ultimate U.S. customer, evidence that purportedly bolsters a finding of an agency relationship. Pls. Br. 24 (citing J.A. 374). On the fourth factor, Plaintiffs proffer that AMS faced minimal financial risk in these transactions because AMS did not take physical possession of the merchandise and because Venus retained liability for merchandise quality problems, even though AMS took proper title to the merchandise. Pls. Br. 23 (J.A. 374). Plaintiffs contend that this risk minimalization should have led Commerce to find affiliation between the two companies. According to Plaintiffs, that AMS also did not process or add any value to the subject merchandise purchased from Venus supports the same affirmative affiliation conclusion on the fifth prong. Pls. Br. 24 (citing J.A. 271). Plaintiffs maintain on the sixth prong that AMS "clearly marketed the subject merchandise on behalf of Venus" because of AMS's status as [[                    a large seller of Venus products

]]. Pls. Br. 21 (citing J.A. 364-69). Finally, on the last factor, Plaintiffs aver that U.S. consumers of the subject merchandise understood that AMS acted as Venus's domestic sales agent, pointing to, *inter alia*, Venus's letter notifying them that it would bypass AMS and begin working with them directly. Pls. Br. 21-22 (citing J.A. 345-69).

Notwithstanding Plaintiffs' lengthy arguments to the contrary, Commerce did not err when it concluded that the two companies had no agency relationship. The Department notes that nothing on the record shows that Venus played a role in price negotiations between AMS and its domestic customers or that Venus paid AMS commissions for its subject merchandise sales. *Issues & Decision Mem.* at 8 (citing J.A. 373-74, 441); *see* J.A. 306, 418, 984. Commerce also found that Venus had limited interaction with AMS's U.S. customers. *Issues & Decision Mem.* at 8-9. While Venus knew the names of these customers from purchase orders, Commerce

determined that this standard industry practice simply allowed Venus to produce the subject

merchandise to the ultimate customers' technical specifications and label/marking requirements.

*Id.* at 8-9 (citing J.A. 372-73); *see* J.A. 270, 306. Moreover, the Department correctly concluded

that Venus and AMS did not establish a principal/agent relationship when Venus notified AMS's

customers by letter that it soon would begin selling its products through its new U.S. affiliate and

no longer through AMS. *Issues & Decision Mem.* at 9. Although Venus may have implied that

AMS acted as its agent, Commerce agreed that "because AMS had been servicing [Venus's]

customers for quite a long time using Venus material, those customers may have had the

*impression* that AMS represented Venus in the U.S. market." *Issues & Decision Mem.* at 9

(citing J.A. 372-73) (emphasis added). The letter's use of the term "agent" cannot alone

demonstrate that such a legal relationship existed. In that vein, the Department recognized that

Venus never engaged in conduct typical of a principal, such as contacting the customers for the

purpose of sales negotiations, presale discussions, or marketing. *Issues & Decision Mem.* at 8-9;

*see* J.A. 373. Finally, the Department noted that although AMS did not maintain an inventory or

add any non-service value to the subject merchandise after purchase, it took title of the subject

merchandise and bore the risk of loss. *Issues & Decision Mem.* at 10 (citing J.A. 372-74); *see*

J.A. 418. Examining the totality of these facts, the Department reasonably concluded that Venus

and AMS did not have an agency relationship, and the court therefore affirms this determination.

**C. The Department's Decision Not to Apply AFA to Venus**

When conducting an antidumping duty administrative review, the Department uses facts otherwise available if a party, *inter alia*, withholds requested information, fails to timely or submit such information "in the form and manner requested," or "significantly impedes" the proceeding. 19 U.S.C. § 1677e(a)(2). After making this finding, Commerce "*may*" employ AFA against the party if the agency makes a separate finding that the "party has failed to cooperate by not acting to the best of its ability to comply with a request for information." § 1677e(b) (emphasis added); *accord Steel Auth. of India, Ltd. v. United States*, 25 CIT 482, 488, 149 F. Supp. 2d 921, 929 (2001). If a party does not submit complete and accurate information due to "simple inadvertence" despite its ability to do so, the Department may apply AFA only once it shows "willfulness on the part of the [party] or behavior below the standard of a reasonable respondent." *Steel Auth. of India, Ltd.*, 25 CIT at 489 n.11, 149 F. Supp. 2d at 930 n.11 (citation omitted).

Plaintiffs assert that Commerce should have applied AFA to Venus's antidumping duty margin calculation. In a laundry list of grievances, they allege that Venus wantonly violated the Department's procedural and regulatory requirements, filed numerous improper requests for extensions of time, and failed to place on the record necessary information which the agency requested. Pls. Br. 30-37. Plaintiffs, though not Commerce, argues that this purported behavior "[s]ignificantly [i]mpeded [t]he Department's [r]eview." Pls. Br. 35. *But see Issues & Decision Mem.* at 11-12, 14-15, 17-22; Def. Br. 25-31.

In light of the "particularly great" deference granted to the Department's factual determinations when deciding whether to apply AFA to allegedly uncooperative respondents, *F.Lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (citations omitted), and the near-frivolous quality of Plaintiffs' allegations, the court adopts Commerce's succinct and eloquent reasoning on this issue in full and affirms its refusal to apply AFA against Venus. *See Issues & Decision Mem.* at 10-22.

### IV. Conclusion

The court denies Plaintiffs' motion for judgment on the agency record.

Dated:    November 23, 2010                     /s/ Judith M. Barzilay
   New York, New York                      Judith M. Barzilay, Judge